Tammy Hussin, Esq. (Bar No. 155290)
Hussin Law
1596 N. Coast Highway 101
Encinitas, CA 92024
Tel: 877.677.5397
Fax: 877.667.5397
Tammy@HussinLaw.com

Attorney for Plaintiffs, Isaac Myers, Stephen Youmans, Charles Key, Geri Marshall, Natalie Huffman, and Steve Huffman

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

| | |
|---|---|
| ISAAC MYERS, STEPHEN YOUMANS, CHARLES KEY, GERI MARSHALL, NATALIE HUFFMAN, STEVE HUFFMAN, AND KAN-MAN LAI *A/K/A* ADA LAI, <br><br> PLAINTIFFS, <br><br> V. <br><br> NCO FINANCIAL SYSTEMS, INC.; AND DOES 1-10, INCLUSIVE, <br><br> DEFENDANTS. | **CASE NO.  2:18-CV-00763** <br><br> **FIRST AMENDED COMPLAINT** FOR DAMAGES FOR VIOLATIONS OF TELEPHONE CONSUMER PROTECTION ACT, 47   U.S.C. §227, *ET SEQ*. |

For this Complaint, the Plaintiffs, by and through their undersigned counsel, based on information garnered from Plaintiffs and investigations by their counsel, hereby state as follows:

1.      This action arises out of repeated violations of the Telephone Consumer Protection Act, 47 U.S.C. §227, *et. seq*. ("TCPA"), and this Court has original

1  jurisdiction of this civil action as one arising under the laws of the United States. 28

2  U.S.C. §1331; *see, Mims v. Arrow Fin. Serv., LLC*, 565 U.S. 132 S. Ct. 740, 181 8   L.

3  Ed.2d 881 (2012).

4          2.      Supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367.

5          3.      Plaintiffs all satisfy Article III standing requirements, as all have suffered

6  concrete injury in the form of repeated invasions of privacy from defendant's

7  automated calls in violation of the TCPA. *See*, *Van Patten v. Vertical Fitness Group*,

8  Case No.3:12-cv-01614 (9th Cir., 2017).

9          4.      Venue is proper in this District pursuant to 28 U.S.C. §1391(b), in that

10  Defendant transacts business here and a substantial portion of the acts giving rise to

11  this action occurred here.

                        **THE PARTIES**

12

13          5.      Plaintiff, Isaac Myers (hereafter, "Myers"), is an adult individual residing

14  in Los Angeles, California, and is a "person," as defined by 47 U.S.C. §153(39).

15          6.      Plaintiff, Geri Marshall (hereafter "Marshall"), is an adult individual

16  residing in Bakersfield, California, and is a "person," as defined by 47 U.S.C.

17  §153(39).

18          7.      Plaintiff, Stephen Youmans (hereafter, "Youmans"), is an adult

19  individual residing in Sacramento, California, and is a "person," as defined by 47

20  U.S.C. 28 §153(39).

21          8.      Plaintiffs, Charles Key, Natalie Huffman, and Steve Huffman are adult

22  individuals residing in Los Angeles, California, and is a "person," as defined by 47

23  U.S.C. §153(39).

24          9.      Plaintiff, Kan-man Lai a/k/a Ada Lai (hereafter "Lai"), is an adult

25  individual residing in Los Angeles County, California, and is a "person," as defined

26  by 47 U.S.C. 28 §153(39).

27

28

10.     Defendant, NCO Financial Systems, Inc. (hereafter, "NCO") is a Pennsylvania corporation. NCO operates regularly collecting consumer debts in this Judicial District and throughout the state of California.

11.     Does 1-10 (the "Collectors") are individual collectors employed by NCO whose identities are currently unknown to the Plaintiffs. One or more of the Collectors may be joined as parties once their identities are disclosed through discovery.

12.     NCO at all times acted by through one or more of the collectors.

## NCO AND THE PLAINTIFFS

13.     NCO recently settled a TCPA class action. *Thornton, et al. v. NCO Financial Systems, Inc.*, Case No. 16 CH 5780 (Cir. 4 Court Cook County, Ill.). Plaintiffs are members of the Injunctive Settlement Class as defined by the Settlement Agreement in *Thornton*.

14.     Like the other members of the Injunctive Settlement Class, Plaintiffs received automated calls from NCO on their cellular telephones during the class period of January 16, 2009, through and including August 31, 2016, as defined in the *Thornton* class action.

15.     Although it was years ago, Plaintiffs each specifically recall being bombarded with unwanted calls from NCO. NCO systematically ignored each of the Plaintiffs' do-not-call directives, and barraged each of them with calls without their consent and over their objections. In fact, there was not a single instance in which NCO honored a do-not-call directive from any of the named Plaintiffs.

16.     Even after being told to stop calling, NCO continued to bombard Plaintiffs with calls on an almost daily basis, multiple times a day, for weeks and months on end. The calls began early in the mornings and persisted well into the evening hours. Plaintiffs estimate they sometimes received upwards of fifteen calls from NCO in a single day.

17.     NCO's calls to Plaintiffs were particularly bothersome because they were

automated. When Plaintiffs answered the calls, NCO sometimes used an automated voice, and Plaintiffs were forced to wait in silence for an available representative with whom they could speak. Other times Plaintiffs answered calls from NCO, and heard only silence and NCO's telephone system never transferred them to a live representative. Other times still, Plaintiffs answered and NCO's telephone system terminated the call. When Plaintiffs did not answer, NCO clogged their voicemails with blank and/or automated messages.

18.     NCO added to Plaintiffs' frustration by calling from many different phone numbers, and by blocking the caller identification such that Plaintiffs would not know it was NCO calling. Some Plaintiffs blocked NCO's telephone numbers in an effort to stop the calls, only to find that NCO would start calling them from a different phone number.

19.     The plaintiffs in *Thornton* alleged that NCO acquired the cellular numbers of class members through skip tracing, and that NCO lacked the requisite consent to place automated calls to them.

20.     Plaintiffs here contend the same, and none of them recall ever providing their cellular numbers to NCO or its predecessors. Upon information and belief, as in *Thornton*, NCO obtained each of Plaintiffs' cellular numbers through skip tracing.

21.     During communications with NCO, Plaintiffs recall being met with rude and abusive representatives when they asked that the calls stop. NCO representatives sometimes openly and openly refused to honor Plaintiffs' do-not-call requests. Representatives sometimes insisted the calls would, and could, continue until such time as the debt was paid. Some representatives terminated the call when told to stop calling, other times representatives ignored the request all together and became loud and aggressive attempting to bully Plaintiffs into making immediate payment.

22.     The calls from NCO intruded on Plaintiffs' rights to be free from unwarranted invasions. By ignoring Plaintiffs' demands to stop calling, NCO caused

Plaintiffs, and each of them, frustration, aggravation, and distress. The calls from NCO interfered with Plaintiffs' ability to use their cellular telephones in the manner in which they were intended, interrupted important calls, wasted their time, interfered with work days, disrupted them while driving, and disturbed quiet evenings and family time.

## COUNT I
## VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT – 47 U.S.C. §227, ET. SEQ.

23.    Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

24.    NCO knowingly and/or willfully called Plaintiffs without their consent and over their objections.

25.    Without prior consent, NCO placed calls to Plaintiffs using an automated telephone dialing system and/or an automated or prerecorded voice on their cellular telephones in violation of 47 U.S.C. §227(b)(1)(A)(iii).

26.    Insofar as NCO knew it had no consent to call Plaintiffs on their cellular telephones, the calls were made in knowing and/or willful violation of the TCPA. As such, NCO should be subject to treble damages for each call pursuant to 47 U.S.C. §227(b)(3)(C).

27.    When NCO called Plaintiffs, its telephone dialing system had the capacity to store randomly or sequentially generated telephone numbers, and randomly or sequentially dialed telephone numbers.

28.    NCO's telephone system used an automated voice when it placed calls to Plaintiffs.

29.    The calls from NCO to Plaintiffs were not placed for "emergency purposes" as defined by 47 U.S.C. §227(b)(1)(A)(i).

30.     Plaintiffs are entitled to damages as a result of NCO's TCPA violations.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that judgment be entered against the Defendants:

1.     As a result of each call made in negligent violation of the TCPA, Plaintiffs, and each of them, are entitled to an award of $500.00 in statutory damages per call, pursuant to 47 U.S.C. §227(b)(3)(B);

2.     As a result of each call made in knowing and/or willful violation of the TCPA, Plaintiffs, and each of them, are entitled to an award of treble damages in an amount up to $1,500.00 per call, pursuant to 47 U.S.C. §227(b)(3)(B) and 47 U.S.C. §227(b)(3)(C); and

3.     Such other and further relief as may be just and proper.

DATED:  March 6, 2018                    HUSSIN LAW

                                         By: /s/ *Tammy Hussin*
                                         Tammy Hussin, Esq.
                                         Attorney for Plaintiffs